# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# LUFKIN DIVISION

| | | |
|---|---|---|
| RUFUS DUNCAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 9:15-cv-29 |
| | § | |
| RANDY ALLEN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This lawsuit arises from a failed oil drilling venture involving Plaintiff Rufus Duncan, Defendant Randy Allen, and David Frankens ("Frankens"). The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different states and the amount of controversy exceeds $75,000.

In this case, Plaintiff sues Defendant for breach of contract, breach of partnership agreement, breach of fiduciary duty, and violations under the Texas Business Organizations Code. *See* Pl.'s Orig. Compl. (Doc. No. 1). Defendant denies Plaintiff's allegations and asserted his own counterclaims against Plaintiff. *See* Def.'s Answer (Doc. No. 4). On August 22, 2016, Defendant filed a Stipulation of Dismissal of Counterclaims with Prejudice (Doc. No. 65), which this Court granted. *See* Order (Doc. No. 66). Only Plaintiff's claims remain at issue.

Defendant filed a Motion for Partial Summary Judgment and Brief in Support Thereof ("Defendant's MSJ") (Doc. No. 24), seeking judgment on Plaintiff's claims of breach of contract, breach of partnership agreement, breach of fiduciary duty, and violations under the Texas Business Organizations Code. The Court issued a Preliminary Order (Doc. No. 67), which

1

**GRANTED IN PART** and **DENIED IN PART** Defendant's MSJ. The instant Memorandum Opinion sets forth the Court's reasoning for its ruling.

## I. FACTUAL BACKGROUND

### a. The Parties Form an Oil and Gas Drilling Business

In early 2012, Frankens and Defendant discussed forming an oil and gas drilling business. Plaintiff was initially not included in this business. However, Plaintiff and Frankens were personal friends who conducted several business deals together, resulting in one to five million dollars of profit. So, in or around July 2012, Frankens contacted Plaintiff to see if Plaintiff was interested in assisting with the potential oil and gas drilling business.

On July 12, 2012, Plaintiff, Frankens and Defendant conducted a telephone conference to discuss the prospective business, including their respective contributions to the business. During this call, the parties agreed that Plaintiff would loan the money necessary to operate the business, Defendant would oversee the field operations, and Frankens would manage the business's finances. The initial revenue would first be used to repay Plaintiff for his loan, and then, the remaining profits would be divided amongst the three men. No other form of compensation would be provided to each party for his contribution.

Also during the July 12th telephone conference, Plaintiff stated that he would form limited liability companies to get the business started. Plaintiff claims that, at or around this phone call, the three men created a partnership for their oil and gas drilling business. Defendant disagrees and asserts that no business activities occurred before the limited liability companies were registered. It is undisputed that this July 12th telephone conference was the only time all three individuals collectively discussed the business before the limited liability companies were registered.

Although the parties reached an understanding as to how the business would operate, they did not memorialize any of their business arrangements in writing. Instead, all alleged agreements were oral. Now, Plaintiff and Defendant disagree over whether the business's losses should be split evenly among the three men. Plaintiff and Frankens claim that the parties agreed to share the losses of the business. Meanwhile, Defendant denies entering into such an agreement and contends that he did not agree to oversee the daily drilling operations and share in the business's losses.

### b. 2012 Synergy Drilling, LLC and 2012 Synergy Holdings, LLC are Registered

Seven days after the July 12th telephone conference, on July 19, 2012, the parties registered 2012 Synergy Drilling, LLC ("Synergy Drilling") and 2012 Synergy Holdings, LLC ("Synergy Holding") (collectively, the "LLCs") with the State of Texas. Synergy Holdings was created to hold the oil and gas leases, and Synergy Drilling was created to act as the drilling operator. The members of the LLCs were Plaintiff, Frankens and Defendant (the "Members"). The managers of both LLCs consisted of the three Members and Plaintiff's son, Scott Duncan.

The LLCs conducted all business dealings related to the parties' oil and gas drilling business. For example, Synergy Drilling purchased supplies and drilling equipment and hired employees while Synergy Holdings signed one to two mineral leases. The LLCs also filed federal tax returns in 2012 and 2013, issued K-1s to its Members, and maintained balance sheets, accountings, and books and records associated with the parties' oil and gas drilling business.

Moreover, all business losses at issue are documented in the LLCs' records. According to the LLCs' 2013 end-of-year balance sheets, Plaintiff loaned the LLCs a total of $461,893.77 either directly or through one of Plaintiff's other companies. These loans are all notes to the LLCs, and the only parties to these notes are the respective LLC and Plaintiff or one of

3

Plaintiff's companies. Defendant is not a party to these loans. Notably, Plaintiff claimed the losses (i.e. $461,893.77 in loans) of the oil and gas drilling business on his personal tax returns as a member of the LLCs.

### c. The Parties Drill in the Neimeyer Ranch

Originally, Frankens and Defendant considered drilling in a property in or near Val Verde/Edwards County, Texas (herein referred to as the "Wardlaw Ranch"). Shortly after the LLCs were registered, the Members learned of another opportunity to drill in a property located in Uvalde County (herein referred to as the "Neimeyer Ranch"). Plaintiff claims that Defendant and Frankens decided to drill in the Neimeyer Ranch instead of the Wardlaw Ranch. Defendant claims that all Members decided to begin drilling in the Neimeyer Ranch. In the end, on August 23, 2012, Synergy Holdings signed an oil and gas lease for the Neimeyer Ranch and drilling commenced in the Neimeyer Ranch.

Plaintiff provided the money to drill two wells in the Neimeyer Ranch. Drilling commenced in late 2012 and lasted for approximately two months. During these two months, Defendant supervised the drilling operations. In the end, despite spending more than $450,000 to drill these two wells, neither well in the Neiyemer Ranch produced any oil.

### d. Operations Cease and Plaintiff Demands Repayment

In February 2013, Plaintiff held a meeting with Frankens and Defendant. During this meeting, Plaintiff informed Frankens and Defendant that he would no longer fund the LLCs and the LLCs should wind down. Plaintiff explained that the operation was costing more than anticipated, and he was uncomfortable paying employees to continue with the operation. Although Defendant insisted that drilling continue, Frankens agreed with Plaintiff's decision to terminate operations.

Also during the February 2013 meeting, Plaintiff provided Frankens and Defendant with an accounting of their share of the business's losses and requested that Defendant and Frankens each pay one-third of the money that Plaintiff loaned to the business. According to Plaintiff, Defendant did not dispute that he owed one-third of the business's losses. Instead, Defendant asked Plaintiff for one year to generate the money. Plaintiff agreed and also provided Frankens with additional time to pay his share of the losses.

In December 2013, Plaintiff emailed Defendant and asked if he still planned to pay his share of the business's losses by February 2014. Plaintiff argues that Defendant did not protest owing one-third of the business's losses at that time. Then, on May 12, 2014, Plaintiff sent another email to Defendant saying, "Randy, you said last year that [you] would be ready to pay after one year. By my calculations that time has passed. I'd appreciate it if you could forward me your portion of the $153,964.59." Once again, Plaintiff avers that Defendant did not dispute his share of the business's losses.

Defendant, on the other hand, maintains that no such an agreement exists. Defendant further claims that neither Defendant nor Frankens have paid Plaintiff. Plaintiff contends that Frankens has paid his share of the losses. The facts surrounding Frankens' payment, however, are unclear. Plaintiff testified that he met with Frankens the day before Plaintiff's deposition, and Frankens provided him with a check for his share of the losses. Defendant clarifies that Frankens asked Plaintiff not to cash the check until the middle of March 2016. Plaintiff did not cash the check and ultimately agreed that Frankens has not actually repaid him. When asked why Frankens wrote Plaintiff a check, Plaintiff testified that Frankens "thought it would look better . . . [i]f he went ahead and said he was going to pay [Plaintiff]."

5

### e. Plaintiff Files this Lawsuit

Plaintiff asserts that he was forced to file this lawsuit to collect the money that Defendant owes him. Specifically, Plaintiff claims that Defendant breached the partnership agreement and the parties' contract by refusing to pay Plaintiff for his share of the losses. Plaintiff further avers that Defendant breached his fiduciary duties to the partnership by (1) representing he had knowledge and skills (which he did not possess) and (2) refusing to pay Plaintiff for his share of the partnership losses. Finally, Plaintiff claims that Defendant is liable under Section 152.202 of the Texas Business Organizations Code for his share of the partnership's losses and Section 152.210 of the Texas Business Organizations Code for violating his fiduciary duties to the partners. Defendant denies Plaintiff's claims.

## II. LEGAL STANDARD

The Court should grant a motion for summary judgment if no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008). A fact is material if it might affect the outcome of the suit under the governing law. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon*, 560 F.3d at 326. When ruling on a motion for summary judgment, the Court must view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Sossamon*, 560 F.3d at 326.

Under Rule 56, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (internal quotation omitted). If the moving party fails to meet this initial burden, the motion must be denied regardless of the nonmovant's response. *Id.* (internal quotation omitted). If the movant meets the burden, however, Rule 56 requires the opposing party to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Anderson*, 477 U.S. at 250; *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 337 (5th Cir. 2008); *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, and metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita*, 475 U.S. at 585; *U.S. ex rel. Farmer*, 523 F.3d at 337; *Duffie*, 600 F.3d at 371.

## III. <u>DISCUSSION</u>

Defendant asserts in his MSJ that the Court must dismiss Plaintiff's breach of partnership agreement, breach of fiduciary duty, and Texas Business Organizations claims because no partnership existed between Plaintiff and Defendant. Defendant further contends that Section 101.151 of the Texas Business Organization Code and the Statute of Frauds render the alleged oral repayment promise against Defendant unenforceable. Finally, Defendant declares that Plaintiff's breach of fiduciary duty claims fail because all of Defendant's alleged misrepresentations to Plaintiff were true.

### a. Does a partnership exist between Plaintiff and Defendant?

As an initial matter, the Court must determine whether there is any evidence that a partnership existed between Plaintiff and Defendant. Here, Defendant contends that Plaintiff,

Defendant, and Frankens operated their oil and gas drilling business exclusively through the LLCs. Plaintiff disagrees and claims that an overarching partnership was created before the parties formed the LLCs.

Whether a partnership exists is an important inquiry because under Texas law, partners in a general partnership are personally liable for the partnership's debts, whereas members of a limited liability company are not personally liable for the company's debts. *See Lentz Eng'g, L.C. v. Brown*, No. 14-10-00610-CV, 2011 WL 4449655 *3 (Tex. App.—Houston [14th Dist.] Sept. 27, 2011, no pet. h.), *citing* TEX. BUS. ORGS. CODE ANN. §§ 101.114, 152.304. Texas law defines a partnership as "an association of two or more persons to carry on a business for profit as owners." TEX. BUS. ORGS. CODE ANN. § 152.051(b).

In determining whether a partnership has been formed, courts look to five factors: (1) the receipt or right to receive a share of the profits, (2) the expression of an intent to be partners, (3) the right to participate in control of the business, (4) an agreement to share losses or liabilities, and (5) an agreement to contribute money or property to the business. TEX. BUS. ORGS. CODE ANN. § 152.052(a); *Ingram v. Deere,* 288 S.W. 3d 886, 894, 898-903 (Tex. 2009). No one factor is dispositive, and courts apply a "totality of the circumstances test" when forming their analysis. *Ingram,* 288 S.W. 3d at 898. Under this test, conclusive evidence as to all five factors establishes the existence of a partnership as a matter of law. *Id.* Likewise, the absence of all five factors precludes the recognition of a partnership as a matter of law. *Id.* Conclusive evidence of just one factor "normally is insufficient to establish the existence of a partnership." *Id.*

Here, Defendant claims that there is no evidence of any of the partnership factors listed above. The Court agrees and further finds that Plaintiff has proffered no evidence to distinguish

8

the alleged partnership from the LLCs. Specifically, Plaintiff has not provided any evidence to support the assertion that a partnership existed separate and apart from the LLCs. The Court will now analyze each of the partnership factors below.

**First**, Defendant asserts that no partnership existed because, even viewing the facts in the light most favorable to Plaintiff, *Matsushita*, 475 U.S. at 587, there is no evidence of a right to share in the alleged partnership's profits. For a partnership to exist, it must be a distinct entity from its partners and other businesses. *See* TEX. BUS. ORGS. CODE ANN. § 152.056(a) ("A partnership is an entity distinct from its partners."). An association or organization is not a partnership if it was created under the statute governing the formation of LLCs. *See* TEX. BUS. ORGS. CODE ANN. § 152.051(c). In his Response to Defendant's MSJ, Plaintiff argues that there was an agreement to share profits in that Plaintiff would advance the money to fund the business and any revenue would first be used to reimburse Plaintiff and the remaining profits would be split evenly among the three men. *See* Pl.'s Resp. to Def.'s MSJ at 10 (Doc. No. 31).

Plaintiff, however, presents no evidence that the alleged partnership entered into any agreement to share profits. Nor has Plaintiff presented any evidence to establish that the LLCs' profits (or losses) flowed through to a partnership. Indeed, Plaintiff also fails to present any document or testimony to show that the partnership conducted any business of its own. The record evidence is uncontroverted that Plaintiff, Defendant, and Frankens's business was conducted exclusively by the LLCs. The LLCs reported their finances on their own separate tax filings while the alleged partnership never filed a tax return. Def.'s MSJ Ex. 1 at ¶ 7; Ex. 9-12; *see* Ex. 13 at response to RFP No. 4. On these bases, there is no evidence that the alleged partnership was capable of making any profits. Given the absence of any evidence that the alleged partnership was capable of making profits or losses, the Court finds that Plaintiff has

9

failed to produce any evidence to raise a genuine issue of material fact that Defendant had the right to share in the receipt of or had a right to receive a share of the supposed partnership's profits.

**Second**, there is no evidence that either Defendant or Plaintiff expressed an intent to be partners. It is uncontested that the word "partnership" was never mentioned during the July 12, 2012 phone call and that Defendant did not speak to Plaintiff again until February 2013. Def.'s MSJ Ex. 2 at 44:22-25, 56:1-4; *see also* Ex. 1 at ¶6. Plaintiff nonetheless maintains that the "business" was a partnership. Pl.'s Resp. to Def.'s MSJ at 16 (Doc. No. 31). To support his contention, Plaintiff cites to Frankens's testimony where he agreed that he was a "partner in these Synergy companies." Pl.'s Resp, to Def.'s MSJ Ex. 3 47:16-48:9.

The record evidence, however, shows that Plaintiff and Frankens are conflating the supposed partnership with the LLCs. Plaintiff admitted that the LLCs and supposed partnership are the same entity. *See* Def.'s MSJ Ex. 3 at 33:6-34:3 (Q. Okay. So the partnership and the LLCs, in your mind, are the same? A. Yeah. Uh-huh); *see also* Ex. 3 at 188-19:21. Frankens also testified that he does not recall forming any companies other than the two LLCs to pursue the oil and gas drilling business. *See* Def.'s MSJ Ex. 15 at 47:16-48:11. As explained above, a business is not a partnership if it was created under the statute relating to the formation of LLCs.[1] *See* TEX. BUS. ORGS. CODE ANN. § 152.051(c). Therefore, while there is some evidence that the parties intended to create the LLCs, Plaintiff fails to cite to any evidence of a separate and independent intent to be partners.

---

[1] As evidence of an intent to be partners, Plaintiff also points to the fact that each LLC filed a "U.S. Return of Partnership Income." Under the law, an LLC's election to be taxed as a partnership does not transform the LLC into a partnership. *SK Med. Ctr., LLC v. Estahbanati,* 418 S.W. 3d 867, 874 (Tex. App.-Houston [14th Dist.] 2013, no pet. h.) (holding that calling a LLC a partnership for tax purposes does not transform the LLC into a partnership). More importantly, however, these filings are not evidence that Plaintiff and Defendant formed a separate partnership from the two LLCs and cannot support this factor.

Ultimately, Plaintiff's claim of a partnership is only supported by his conclusory statements that one existed. Case law is clear: Plaintiff's conclusory statements cannot constitute evidence of this factor. *Hoss v. Alardin*, 338 S.W.3d 635, 644 (Tex. App.—Dallas 2011, no pet.) (conclusory statements do not constitute evidence for determining the five partnership factors). Just as the first factor, the Court concludes that Plaintiff has not provided any evidence to raise a genuine issue of material fact that either the Plaintiff or Defendant expressed an intent to be partners.

**Third,** Defendant claims that a partnership did not exist because there is no evidence to show that he could participate in the control of the alleged partnership. The right to control a business is the right to make executive decisions. *Ingram,* 288 S.W. 3d at 901. Examples include exercising authority over the business's operations, having the right to write checks on the business's checking account, having control over and access to the business's books, or receiving and managing the business's assets and monies. *Id.; Rojas v. Duarte,* 393 S.W. 3d 837, 843 (Tex. App.—El Paso 2012, pet. denied). Plaintiff rebuts Defendant's argument by claiming that Defendant exercised his control of the partnership by deciding which employees to hire, what equipment to purchase, and where to obtain leases and drill. Pl.'s Resp. to Def.'s MSJ at 13-14 (Doc. No. 31). Also, Plaintiff explains that Defendant had an equal right to control and examine the partnership's books and records. *Id.*

Once more, Plaintiff fails to produce evidence to differentiate between the LLCs and the supposed partnership. Even viewing the facts in the light most favorable to Plaintiff, *Matsushita*, 475 U.S. at 587, Plaintiff's examples are evidence of Defendant's right to control the LLCs, not the alleged partnership. Although the record shows that Plaintiff is correct in that Defendant signed a lease and purchased equipment, Defendant signed the Neimeyer Lease on behalf of Synergy Holdings (Def.'s MSJ Ex. 7) and purchased equipment through Synergy Drilling (Def.'s Ex.

11

2 to Pl.'s Resp. at 106: 4-7). Furthermore, the only books and records relating to the oil and gas drilling business are those of the LLCs; there is no evidence that the alleged partnership maintained any books or records. In sum, Plaintiff offers no evidence – either through testimony or documents – of Defendant's ability to participate in the control of the alleged partnership. Without any such evidence, Plaintiff yet again fails to raise a fact issue as to this factor.

**Fourth,** Defendant claims that there is no evidence of his right to share in the alleged partnership's losses. Defendant contends that there is no evidence that the partnership even had any losses of its own or conducted any distinct business. To support his argument, Defendant points to the LLCs' tax returns and explains that the business's losses belonged to the LLCs and were claimed as losses by the LLCs in their tax returns. Def.'s MSJ Ex. 8, Exs. 9-12; *see also* Ex. 3 205:23-206:19. In addition, Defendant states that the alleged partnership did not keep any books or file any separate tax returns. Def.'s MSJ Ex. 1 at ¶7; *see* Ex. 13 at response to Req. for Prod. No. 4. Similarly, K-1s were issued by the LLCs to the Members for the venture's losses, and no such documents were issued by a partnership. Def.'s MSJ Ex. 9-12 on pgs. bates labeled 709-713, 723-729, 909-913, 925-930; Ex. 1 at ¶ 7.

In response to Defendant's MSJ, Plaintiff states that Frankens and Plaintiff testified that the parties expressly agreed to share the losses, with each alleged partner shouldering one third of the loss. Plf.'s Resp. to Def.'s MSJ Ex. 2 at 75:9-76:5, 134:17-135:3; Ex. At 8:24-9:24, 14:8-16:1, 32:23-34:4, 75:15-76:8, Ex. 4 at ¶ 2. To begin with, simply stating that these losses are the alleged partnership's losses is insufficient to raise a genuine issue of material fact as to this factor. *See Hoss*, 338 S.W.3d at 644. Moreover, Plaintiff does not explain how the evidence shows that the agreement to share losses is connected to the partnership and not the LLCs. As the prior factors, even viewing the facts in the light most favorable to Plaintfif, *Matsushita*, 475

U.S. at 587, Plaintiff has failed to produce any evidence to raise a genuine issue of material fact that Defendant had the right to share in the alleged partnership's losses.

**Fifth**, Defendant contends that there is no evidence that he had an obligation to contribute cash or property to the alleged partnership. "Property" includes tangible and intangible property and an interest in that property. TEX. BUS. ORGS. CODE ANN. § 1.002. The undisputed evidence shows that Defendant was not required to contribute any property to the LLCs or the supposed partnership. Def.'s MSJ Ex. 1 at ¶ 5; Ex. 2 at 46:6-15; Ex. 3 at 100:17-22, 152:10-20. Instead, Defendant's only obligation was to oversee the daily drilling operations for the LLCs. Def.'s MSJ Ex. 1 at ¶ 5; Ex. 2 at 46:6-15; Ex. 3 at 100:17-22, 152:10-20.

In an attempt to refute Defendant's argument, Plaintiff claims that Defendant (1) agreed to pay one-third of the business's losses, (2) used his American Express card to make purchases for the business, and (3) gave the geologist an interest in another oil-exploration venture and equipment worth $25,000 as payment for his services to the business. Plaintiff's Resp. to MSJ Ex. 2 at 75:9-76:5, 103:18-25, 134:17-135:3, 145:25-146:5; Ex. 3 at 8:24-9:24, 14:8-16:1, 28:5-7, 32:23-34:4, 45:7-17, 75:15-76:8; Ex. 1 at 52-20-53-6, 87:2-13, 90:4-9, 102:9-15, 103:12-104:5. Missing from Plaintiff's Response to Defendant's MSJ is any evidence linking these actions to the alleged partnership. In the Reply to Defendant's MSJ, Defendant highlights this weakness and clarifies that none of Plaintiff's evidence shows that Defendant contributed any money to the alleged partnership. Def.'s MSJ Ex. 8. Similar to the prior four factors, while there is some evidence that Defendant had an obligation to contribute cash or property to the LLCs, the Court finds that there is no evidence that Defendant had any such obligation to the alleged partnership. *Matsushita*, 475 U.S. at 587.

Finally, Plaintiff's bare contention that the partnership was created when the Members agreed to go into business one week before registering the LLCs is not enough to establish that a partnership existed. To begin with, there is no evidence to support this contention, rendering it a conclusory statement that cannot defeat summary judgment. *See Hoss*, 338 S.W.3d at 644. Further, as discussed in *Lentz Engineering*, merely engaging in business activities prior to creating an LLC does not itself create a separate partnership. 2011 WL 4449655 at *5. *See also Hoss,* 338 S.W. 3d at 639 (holding that no separate partnership existed even though the parties had been working on their prototype for several years before creating the LLC).

Above all, the undisputed evidence contradicts the existence of any partnership between the parties. The alleged partnership did not have a name, was not registered, and never conducted any business separate from the LLCs related to the parties' oil and gas drilling business. Nor did the alleged partnership own any assets, lease any property, hire any employees, or generate any income. The partnership also did not loan money to the LLCs or have any losses or liabilities of its own. It was neither a manager nor a member of either LLC. It did not file any tax returns or issue any K-1s. It did not maintain any books or records or have any meeting minutes or organizational or operational documents. Indeed, no document or testimony exists to show that the parties created a distinct partnership separate and apart from the LLCs.

In the end, Plaintiff failed to raise a fact issue as to any of the five partnership factors. The Court finds that no separate and distinct partnership was created between Plaintiff and Defendant.[2] *See Lentz Eng'g*, 2011 WL 4449655 at *3 ("The absence of evidence of all of the

---

[2] In this case, the parties argue whether a partnership existed and discuss the factors set forth in the Texas Revised Partnership Act. *See* Def.'s MSJ at 15-16 (Doc. No. 24); *see also* Pl.'s Resp. to Def.'s MSJ at 7-9 (Doc. No. 31). Plaintiff does not contend that a common law partnership existed between him and Defendant. However, even if Plaintiff argued that a common law partnership existed, such an argument would still fail as a matter of law. Texas

factors will preclude the finding of a partnership."); *see also Hoss,* 338 S.W. 3d at 650 (finding some evidence of only one factor and concluding there was no partnership). Plaintiff's claims of breach of partnership agreement, breach of fiduciary duty,[3] and violations of the Texas Business Organizations Code are predicated on the existence of a partnership between Plaintiff and Defendant. Because no partnership existed, the Court **GRANTS IN PART** summary judgment on these claims.[4]

### b. Breach of Contract Claim

As for Plaintiff's breach of contract claim, Defendant asserts that Section 101.151 of the Texas Business Organization Code and the Statute of Frauds prohibit Plaintiff from enforcing the alleged oral repayment promise against Defendant. The Court determines that issues of fact remain as to how to characterize the oral repayment promise and whether Section 101.151 of the Texas Business Organization Code or the Statute of Frauds applies in this case.

The parties have presented conflicting evidence as to how to characterize Defendant's alleged promise to repay Plaintiff for one-third of the business's losses. According to Defendant, Plaintiff testified that in the event the LLCs could not repay his loans, Defendant was obligated

---

common law imposes a more stringent standard for establishing the existence of a partnership. *See Ingram v. Deere,* 288 S.W. 3d 886, 896 (Tex. 2009). Specifically, under Texas common law, proof of **all** five of the following factors are necessary to establish the existence of a partnership: (1) intent to form a partnership, (2) a community interest in the venture, (3) an agreement to share profits, (4) an agreement to share losses, and (5) a mutual right of control or management of the enterprise. *Coastal Plains Dev. Corp. v. Micrea,* 572 S.W. 2d 285, 287 (Tex. 1978). These common law factors are similar to the factors under Texas Business Organizations Code Section 152.052(a). As noted above, Plaintiff has failed to present any evidence of a partnership, including evidence of an intent to form a partnership, an agreement to share profits, an agreement to share losses, and a mutual right of control or management of the enterprise. To this end, the Court finds that no common law partnership existed between Plaintiff and Defendant.

[3] Although the parties did not plead a common law partnership, the Court notes that partners in a common law partnership owe one another a fiduciary duty. *Hawthorn v. Guenther,* 917 S.W. 2d 924, 934 (Tex. App.—Beaumont 1996, writ denied). As noted in footnote 2 above, the Court finds that no common law partnership existed between Plaintiff and Defendant. As such, even if Plaintiff had raised a breach of fiduciary duty based on a common law partnership, that claim would have also failed as a matter of law.

[4] Because the Court finds that no partnership existed and dismisses Plaintiff's breach of fiduciary duty claims, it does not consider Defendant's argument that Defendant's alleged misrepresentations to Plaintiff were true.

to contribute cash into the LLC so they could then pay those debts. Def.'s MSJ Ex. 3 at 155:9-156:7. Texas law requires that to be enforceable, any promise to make a contribution or otherwise pay cash to a limited liability company must be (1) in writing and (2) signed by the person making the promise. TEX. BUS. ORGS. CODE ANN. § 101.151. Here, Defendant argues that because the repayment promise was not in writing or signed by Defendant, it is unenforceable as a matter of law. *See Ghosh v. Grover,* 412 S.W. 3d 749, 754 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Plaintiff disputes that this repayment was a contribution to the LLC. Instead, Plaintiff claims that Defendant promised to repay him, not the LLCs. Pl.'s Resp. to Def.'s MSJ Ex. 2 at 75:9-76:5, 103:18-25, 134: 17-135:3, 145:25-146:5, 156:1-5; Ex. 3 at 8:24-9:24, 14:8-16:1, 28:5-7, 32:23-34:4, 75:15-76:8; Ex. 4 at ¶¶16-17. To support his argument, Plaintiff points to the fact that Frankens (who was also a member of the LLCs) wrote a check to Plaintiff, not the LLCs for his share of the business's losses. Pl.'s Resp. to Def.'s MSJ Ex. 4 at ¶ 16. Plaintiff also clarifies that he did not intend to testify that the members would have to make formal contributions to the LLC to repay Plaintiff's losses. Pl.'s Resp. to Def.'s MSJ at 22 (Doc. No. 31).

Defendant then argues that to the extent the repayment is a "personal guarantee," this agreement would be unenforceable under the Statute of Frauds. Texas law requires that to be enforceable, any "promise by one person to answer for the debt, default, or miscarriage of another person" must be in writing and signed by the person to be charged with the promise. TEX. BUS. COMM. CODE ANN. § 26.01(b)(2). Here, all of the debts claimed by Plaintiff were notes from Plaintiff or one of his companies to the LLCs. Def.'s MSJ Ex. 8; Ex. 3 at 208:8-209:8.

As an initial matter, Plaintiff argues that Defendant failed to properly plead his Statute of Frauds defense. Upon reviewing the pleadings in this case, the Court finds that Defendant properly pled his Statute of Frauds defense in his Answer to Plaintiff's Original Complaint. Defendant's Answer "state[d] in short and plain terms" his Statute of Fraud defense and provided Plaintiff with fair notice of the basis for the defense. Fed. R. Civ. P. 8(B)(1)(A).

Once again, however, viewing the facts in the light most favorable to Plaintiff, *Matsushita*, 475 U.S. at 587, the Court finds that a genuine issue of fact exists as to whether Defendant's promise to bear one third of the business's losses was a promise to act as a mere surety of the LLCs' debts or whether Defendant made the debt his own and assumed primary responsibility for this debt. *Gulf Liquid Fertilizer Co. v. Titus,* 354 S.W. 2d 378, 383-84 (Tex. 1962). If the promise qualifies as the latter, then Defendant may not escape performance by use of the Statute of Frauds. *Id.* at 383.

Ultimately, the Court finds that genuine issues of material fact exists as to how to characterize the Defendant's alleged oral repayment agreement to Plaintiff. For this reason, the Court **DENIES** summary judgment on Plaintiff's breach of contract claim.

## IV. CONCLUSION

In sum, it is **ORDERED** that Defendant Randy Defendant's Motion for Partial Summary Judgment (Doc. No. 24) is **GRANTED IN PART** as to:

1. Plaintiff's breach of partnership agreement claim;
2. Plaintiff's breach of fiduciary duty claim; and
3. Plaintiff's claims of violations the Texas Business Organizations Code.

It is further **ORDERED** that Defendant Randy Defendant's Motion for Partial Summary Judgment (Doc. No. 24) is **DENIED IN PART** due to factual disputes that must be resolved

with respect to Plaintiff's breach of contract claim. The trial of this lawsuit will focus only Plaintiff's breach of contract claim against Defendant.

**It is SO ORDERED.**

**SIGNED this 24th day of August, 2016.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE